IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUAN SEGURA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 02-CV-243-HDC-PJC |
| ) | |
| MIKE MULLIN, Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

On April 2, 2002, Petitioner, a state inmate incarcerated at the Oklahoma State Penitentiary and appearing *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. # 1) along with a supporting brief (Dkt. # 2). On May 31, 2002, Petitioner filed a motion for leave to proceed *in forma pauperis* (Dkt. # 4). By Order filed June 13, 2002 (Dkt. # 5), the Court denied Petitioner's motion and directed him to pay the filing fee. Petitioner failed to pay the filing fee by the deadline established by the Court. As a result, on March 17, 2005, the petition was dismissed. After receiving correspondence from Petitioner, see Dkt. # 9, the case was reopened. See Dkt. # 10. On July 19, 2005, Petitioner paid the $5.00 filing fee.

Petitioner challenges his First Degree Murder conviction entered in Tulsa County District Court, Case No. CF-1999-3009. Respondent filed a response (Dkt. # 17) to the petition and provided the state court records (Dkt. # 18) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 21) to Respondent's response. For the reasons discussed below, the Court finds the petition should be denied.

## ***BACKGROUND***

In affirming Petitioner's conviction and sentence on direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") provided the following summary of relevant facts:

> On June 19, 1999, Juan Segura and Terrence Johnson were loitering about a Tulsa convenience store when they ran into Ashley Gingerly and Tannequa Lewis. Lewis was unsuccessfully attempting to page her father to walk her home. Jeremy Brogna, whom the four had just met, invited her to use the phone at his trailer. Everyone accompanied Brogna home.
> Inside the trailer, Segura, Johnson and Brogna drank alcohol and talked. As there was no phone at the trailer, Lewis and Gingerly wanted to leave. Johnson, who had stated he would walk them home, walked with them to the front door while Segura went to the bathroom.
> Lewis, Gingerly, and Johnson were still at the front door when Segura emerged from the bathroom, gesturing toward his neck with a knife. Segura approached Brogna, who was extremely intoxicated and seated in a chair. Segura then fatally severed Brogna's jugular vein.
> Lewis, Gingerly, and Johnson fled the trailer. Segura attempted to follow with Brogna's television, which was too heavy to carry. He soon caught up with the others, carrying Brogna's billfold, which he discarded after finding no money. The billfold was later discovered by a resident of the trailer park and turned over to police.
> All four then went to Rick Harrison's house, where Segura told his friend Christine Barbero that he had just killed someone and handed her the knife. Barbero threw the knife in the trash can. Segura then admitted the stabbing to Harrison. Harrison retrieved the knife from the trash can and threw it outside where it was later recovered by police.

(Dkt. # 18, Ex. 3 at 1-2).

As a result of those events, Petitioner Juan Segura was charged in Tulsa County District Court, Case No. CF-1999-3009, with First Degree Malice Aforethought Murder, or, in the alternative, Felony Murder. At the conclusion of a jury trial, held April 10-14, 2000, Petitioner was found guilty of Murder in the First Degree with Malice Aforethought, and not guilty of Felony Murder. On May 1, 2000, the trial court sentenced Petitioner in accordance with the jury's recommendation to life imprisonment without the possibility of parole. The trial court also imposed

a fine of $1,000. Petitioner was represented at trial by attorney John C. Harris, III.

Represented by attorney S. Gail Gunning, Petitioner appealed his conviction and sentence to the OCCA. On direct appeal, he identified four (4) propositions of error as follows:

>Proposition 1: Mr. Segura's sentence should be modified or remanded for resentencing because the jury was subjected to extrinsic misinformation in reaching the sentencing verdict.
>
>Proposition 2: Mr. Segura was prejudiced by the Court's refusal to instruct the jury on the defense theory of voluntary intoxication.
>
>Proposition 3: Mr. Segura was prejudiced by the prosecutor's improper questioning in *voir dire* and by improper closing argument.
>
>Proposition 4: Cumulative error denied Mr. Segura a fair trial.

(Dkt. # 18, Ex. 1). In an unpublished opinion, filed April 18, 2001, in Case No. F-2000-631, the OCCA affirmed the judgment and sentence of the trial court. See Dkt. # 18, Ex. 3.

On July 31, 2003, Petitioner, appearing *pro se*, filed an application for post conviction relief in the state district court. See Dkt. # 17, Ex. 1 (docket sheet). The state district court denied post-conviction relief on September 26, 2004. Id. Petitioner did not pursue a post-conviction appeal.

On April 2, 2002, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1), along with a supporting brief (Dkt. # 2). He identifies the same four (4) grounds of error raised on direct appeal. See Dkt. #s 1 and 2. In response to the petition, Respondent contends that Petitioner is not entitled to habeas corpus relief. See Dkt. # 17.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). After

careful review of the record, the Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The OCCA adjudicated each of Petitioner's grounds of error on direct appeal. As a result, Petitioner must satisfy the 28 U.S.C. § 2254(d) standard to be entitled to habeas corpus relief.

***1. Jury prejudiced by "extrinsic misinformation" in determining sentence***

As his first proposition of error (Dkt. #s 1, 2), Petitioner asserts that "extrinsic

4

misinformation" held by one of the jurors, that the average length of a life sentence was eight (8) years, prejudiced the jury in determining his sentence. The record reflects that during deliberations, the jury sent a note to the trial court judge seeking definitions of "life" imprisonment and parole eligibility and asking whether one juror's belief concerning the average length of a life sentence was accurate.[1] See Dkt. # 18, Ex. 4. The trial court judge sent a responsive note to the jury stating "[y]ou have all the instructions you need to reach a verdict." Id. On direct appeal, the OCCA rejected the claim, finding as follows:

> We initially disagree with Segura's characterization of the juror's belief regarding a life sentence as extrinsic misinformation. A juror can be familiar with a variety of topics, including parole eligibility. A litigant cannot expect all twelve jurors to be completely ignorant of the myriad subjects possibly raised during trial. Here, it happened that one juror held some type of knowledge or belief regarding parole eligibility.
> The trial court correctly responded to the jury's note in accordance with our current law. When inquiry is made over how much time a defendant will serve for a particular sentence, the trial court should not answer the question but should refer the jury to the instructions. Thus, there was no error and this Proposition is denied.

See Dkt. # 18, Ex. 3 (footnote omitted).

To the extent Petitioner complains that the trial court judge erred in responding to the jury's note by simply referring to the instructions already given rather than providing further guidance, the Court finds Petitioner is not entitled to habeas corpus relief because the claim concerns procedures established by state law. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is

---

[1] The portion of the note containing the "misinformation" reads as follows: "One juror stated that the average length of a life sentence these days was 8 years. Do we consider that or is that accurate?" (Dkt. # 18, Ex. 4).

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id.; 28 U.S.C. §§ 2254(a). To be entitled to habeas corpus relief, a petitioner must show that the alleged violation of state law resulted in a denial of due process. See Aycox v. Lytle, 196 F.3d 1174, 1179-80 (10th Cir. 1999) (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)). "Moreover, the deprivation occasioned by the state's failure to follow its own law must be 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." Aycox, 196 F.3d at 1180.

In this case, the trial court judge followed the procedure established by Oklahoma law, see Rice v. State, 666 P.2d 233, 235 (Okla. Crim. App. 1983), by referring the jury to the instructions already given. The Court finds no impropriety in the action by the trial court judge in responding to the jury's note and no violation of due process.

To the extent Petitioner complains that he was denied an impartial jury due to the taint of "extrinsic misinformation," the Court again finds he is not entitled to habeas corpus relief. The Sixth Amendment and principals of due process guarantee a criminal defendant the right to trial by an impartial jury. See Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976) (citations omitted); United States v. Chanthadara, 230 F.3d 1237, 1270 (10th Cir. 2000). Petitioner uses the term"extrinsic misinformation" to describe the information reflected by the jury's note. The word "extrinsic" implies that the information came to the jury from a source outside the trial proceedings. The Supreme Court has long recognized the dangers to impartiality posed by unauthorized communications between third parties and members of the jury. More than a century ago the Court declared that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v. United States, 146 U.S. 140, 150 (1892). Nothing

in the record, however, suggests that any juror obtained the information concerning the length of a life sentence as the result of an impermissible communication. Instead, as noted by the OCCA, it simply appears that "one juror held some type of knowledge or belief regarding parole eligibility." (Dkt. # 18, Ex. 3). Thus, the "misinformation" in this case does not qualify as impermissible extraneous matter since virtually every juror will have preconceived notions about the legal process which the defendant can uncover and examine during jury selection. See Stockton v. Virginia, 852 F.2d 740, 744 (4th Cir. 1988). As a result, the Court agrees with the OCCA's rejection of Petitioner's characterization of the juror's belief as "extrinsic misinformation." Petitioner has not demonstrated that he was denied an impartial jury in violation of the Sixth Amendment.

The Court concludes that Petitioner has failed to show entitlement to habeas corpus relief based on the OCCA's adjudication of this claim. See 28 U.S.C. § 2254(d).

### 2. *Failure to instruct on voluntary intoxication (ground 2)*

As his second proposition of error, Petitioner complains that the trial court erred in refusing to instruct the jury on the defense theory of voluntary intoxication. Petitioner raised this claim on direct appeal where it was rejected by the OCCA as follows:

> Segura's request for the instructions was refused, with the court relying on *Turrentine v. State*, 965 P.2d 955 (Okl.Cr.1998). The trial Court's ruling was correct.
> Voluntary intoxication is only a defense to criminal culpability when a defendant is so intoxicated that his mental abilities are totally overcome, preventing any possible formation of criminal intent. Further, it is a defendant's obligation to "introduce sufficient evidence to raise a reasonable doubt as to his ability to form the requisite criminal intent."
> Segura failed to meet that burden. The evidence indicated that Segura was drinking alcohol and may have been intoxicated. However, it did not suggest his incapacity to form murderous intent, and in fact, suggests quite the contrary. Before the murder, Segura entered the bathroom, pulled a knife, exited the bathroom, made a slicing motion to his throat, walked over to Brogna, and stabbed him in the neck. Segura then tried to steal the television and did steal the billfold; he fled the scene, met his friends, discarded the wallet, and confessed to the crime -- twice. All these

7

> facts reveal that Segura intended to kill Brogna before the murder and understood what he had done thereafter. Accordingly, there was insufficient evidence to warrant an intoxication instruction.

(Dkt. # 18, Ex. 3 at 3-4 (footnotes omitted)).

A habeas corpus petitioner "bears a 'great burden . . . when [he] seeks to collaterally attack a state court judgment based on an erroneous jury instruction.'" Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir. 1993) (quoting Hunter v. New Mexico, 916 F.2d 595, 598 (10th Cir. 1990)). As discussed above, federal habeas corpus relief is not available for alleged errors of state law, and, when an allegedly erroneous instruction is given, this Court examines only "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Furthermore, where a petitioner challenges the trial court's refusal or failure to give a specific instruction, this Court uses a highly deferential standard of review in evaluating the alleged error. "[E]rrors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

The record reflects that Petitioner requested several instructions pertaining to voluntary intoxication, but that the request was denied by the trial court. See Dkt. # 18, Ex. 8, Tr. Trans. Vol.

V at 841. Petitioner contends that his jury should have been given a voluntary intoxication instruction and that the state court's refusal to give it deprived him of due process by preventing him from arguing his theory of the case to the jury. To be entitled to a voluntary intoxication instruction under Oklahoma law, a defendant must demonstrate that the effects of the alcohol "were such that he was rendered totally incapable of forming the requisite intent to commit murder." Turrentine v. State, 964, P.2d 955, 968 (Okla. Crim. App. 1998). Petitioner made no such showing. Evidence presented at Petitioner's trial demonstrated that he had been drinking alcohol on the evening of the murder. See Dkt. # 18, Ex. 7, Tr. Trans. Vol. III at 408, 467-68, 491-92. As found by the OCCA, however, the evidence also demonstrated that in spite of his alcohol consumption, Petitioner remained able to form the intent to commit murder. Furthermore, even had there been sufficient evidence to warrant a voluntary intoxication instruction, Petitioner is required to demonstrate that under the circumstances of his case, the failure to give the instruction rendered the trial so fundamentally unfair as to rise to the level of a due process violation. Maes v. Thomas, 46 F.3d 979, 985 (10th Cir.1995) (citing Nickerson v. Lee, 971 F.2d 1125, 1138 (4th Cir.1992) (failure to give self-defense instruction even where sufficient evidence to warrant it did not rise to due process violation)). Under the facts and circumstances of this case, the trial court's refusal to give the requested voluntary intoxication instruction did not rise to the level of a due process violation. The Court concludes that the Petitioner has failed to show entitlement to habeas corpus relief under 28 U.S.C. § 2254. Therefore, habeas corpus relief on this claim should be denied.

### *3. Prosecutorial misconduct (ground 3)*

As his third proposition of error, Petitioner asserts that the prosecutor asked improper questions during *voir dire* and made improper argument during closing. The OCCA rejected this

9

claim on direct appeal as follows:

> In *voir dire*, the prosecutor questioned two jurors over their attitude towards individuals who carry concealed weapons. This was permissible. The questions did nothing more that explore a potential juror's personal opinions on relevant issues.
> In closing argument, the prosecutor suggested that the reason that Segura's clothing was wet when discovered was because it had been washed or left in the rain to remove the blood. Segura's objection to the argument was properly overruled given that the prosecutor's inference was reasonable based on the evidence. Detective Nance testified that when he recovered the clothing it was "soaking wet" and could have been washed, but that it looked like it had been left in the rain. This proposition of error is without merit.

(Dkt. # 18, Ex. 3 at 4-5 (footnote omitted)).

First, the Court finds Petitioner is not entitled to relief based on the OCCA's adjudication of his challenge to the prosecutor's questioning during *voir dire*. As discussed above, the Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976) (citations omitted). The Supreme Court has stressed that the trial court is granted wide discretion in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Mu'min v. Virginia, 500 U.S. 415, 427 (1991). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Id. at 431.

The record demonstrates that, without objection from Petitioner, the prosecutor questioned two (2) members of the jury panel, Jurors Rogers and Richardson, about their opinion of people who carry concealed weapons. See Dkt. # 18, Ex. 6, Tr. Trans. Vol. II at 119-20, 126-27. The questions were not improper because they assisted both the State and Petitioner in selecting an impartial jury panel. Even if the questions were improper, neither of the venire members who were asked about concealed weapons served on Petitioner's jury having been excused by peremptory challenges.

Petitioner exercised one peremptory challenge to excuse Juror Rogers, see Dkt. # 18, Ex. 7, Tr. Trans. Vol. III at 367. The State exercised one peremptory challenge to excuse Juror Richardson, see id. at 364-65. Thus, Petitioner has shown no prejudice resulting from the questioning and has failed to demonstrate that the questions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). He is not entitled to habeas corpus relief on this claim.

Next, the Court finds Petitioner is not entitled to relief based on the OCCA's adjudication of his challenge to the propriety of the prosecutor's closing argument. Petitioner complains that the prosecutor's remarks concerning the reasons his clothing was wet were improper as not supported by the evidence as "no witness had testified to observing the petitioner attempting to wash his clothes." See Dkt. # 2. Habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

Upon review of the trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. The comments by the prosecutor regarding the recovery of Petitioner's wet clothing were proper comments based on the evidence.

11

Officer Nance testified that he found Petitioner's clothes laying "in a wet heap" on the floor of a bedroom. See Dkt. # 18, Ex. 7, Tr. Trans. Vol. IV at 747. He stated that the clothes were "soaking wet" and "looked like they just come out of a washing machine that hadn't – or it looked like they just came out of water, like they hadn't been wrung out." Id. Officer Nance also testified that "it was stormy that night and rainy." Id. at 716. Furthermore, the record reflects that the comments were made during the State's rebuttal closing, after defense counsel had stated that "[the police] checked his clothes, [blood] wasn't there. He did not even get any of the victim's blood on him." Id. at 860. In light of the evidence of Petitioner's guilt, the comments, even if improper, were not significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). The Court further finds that there is not a reasonable probability that the outcome would have been different without the alleged misconduct. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997). Petitioner is not entitled to habeas corpus relief on this claim.

### *4. Cumulative error (ground 4)*

As his fourth proposition of error, Petitioner alleges that cumulative error deprived him of a fair trial. The OCCA rejected this claim on direct appeal, quoting Walker v. State, 887 P.2d 301, 314 (Okla. Crim. App. 1994), for the proposition that "[w]hen individual errors alleged are without merit, there can be no error by accumulation." (Dkt. # 18, Ex. 3 at 5).

The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having rejected each of Petitioner's claims, the Court finds no basis for a cumulative error analysis.

The OCCA's resolution of Petitioner's cumulative error claim was not an unreasonable application of federal law. Petitioner is not entitled to relief on this ground.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**.

DATED this 14th day of July, 2008.

_____
HONORABLE H. DALE COOK
Senior United States District Judge